**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | |
|---|---|
| **In Re:**<br><br>**HANDLE PREFORMS, LLC,**<br><br>**Debtor.** | **CASE NO. 26-20125-JRS**<br>**SUBCHAPTER V**<br><br>**CHAPTER 11** |

**NOTICE OF *MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT*, DEADLINE TO OBJECT, AND FOR HEARING**

**Debtor Southern Tree Professionals, LLC ("Debtor")** has filed a ***MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT*** **(the "Motion")** on **September 3, 2026**. Pursuant to Fifth Amended and Restated General Order No. 24-2018, the Court may consider this matter without further notice or hearing if no party in interest files a response or objection within **twenty-one (21) days** from the date of service of this notice. **If you object to the relief requested in this pleading, you must timely file your objection with the Bankruptcy Clerk** at Office of the Bankruptcy Clerk, Sidney O. Smith Federal Building and U.S. Courthouse, 121 Spring Street SE, Room 120, Gainesville, GA 30501, and serve a copy on the movant's attorney, Rountree, Leitman, Klein & Geer, LLC, c/o Ceci Christy, 2987 Clairmont Road, Suite 350, Atlanta, Georgia 30329; (404) 584-1238, and any other appropriate persons by the objection deadline. The response or objection must explain your position and be actually received by the Bankruptcy Clerk within the required time.

**PLEASE TAKE FURTHER NOTICE** that a hearing on the pleading has been scheduled for ***September 29, 2026,*** the calendar call for which will be at ***10:30 A.M.*** in ***United States Bankruptcy Court, Courtroom 103, Federal Building, 121 Spring Street, SE, Gainesville, GA 30501,*** which calendar call may be attended in person or via the Court's Virtual Hearing Room. Except as explained in the hearing procedures on Judge Sacca's Chambers webpage, any matter held ready at the calendar call for the Court to hear shall be heard later that day in person at either 11 a.m. or 1 p.m. as mutually requested by the parties in the Courtroom listed above. Please check the "Bankruptcy Hearing Information" link at the top of the homepage of the Court's website, www.ganb.uscourts.gov, which includes a link to Judge Sacca's Chambers webpage, for more information and instructions on how to participate in Court hearings. You should also review the "Hearing Information" tab on Judge Sacca's Chambers webpage for further information about the procedures for the hearing. If the parties do not mutually agree to have the matter heard in person at 11 a.m. (or such other time agreed to by the parties and approved by the Court, such as 11:30 a.m. that day), the matter will be heard in person at 1 p.m. that day.

If an objection or response is timely filed and served, the hearing will proceed as scheduled. **If you do not file a response or objection within the time permitted, the Court may grant the relief requested without further notice or hearing** provided that an order approving the relief requested is entered at least one business day prior to the scheduled hearing. If no objection is timely filed, but no order is entered granting the relief requested at least one business day prior to the hearing, the hearing will be held as scheduled.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one.**

Dated: September 3, 2026

/s/ Ceci Christy
Ceci Christy
Georgia Bar No. 370092
Rountree, Leitman, Klein & Geer, LLC
Century Plaza I
2987 Clairmont Road, Suite 350
Atlanta, Georgia 30329
T: (404) 584-1238
cchristy@rlkglaw.com

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | |
|---|---|
| **In Re:**<br><br>**HANDLE PREFORMS, LLC,**<br><br>**Debtor.** | **CASE NO. 26-20125-JRS**<br>**SUBCHAPTER V**<br><br>**CHAPTER 11** |

**MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT**

The above captioned debtor and debtor-in-possession Handle Preforms, LLC ("**Debtor**"), pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure ("**Rule 9019**"), files this *Motion for Approval of Settlement Agreement* (the "**Motion**") by and between Debtor DT Inventions, LLC ("**DTI**"), Practically Impossible Labs, LLC ("**PIL**", together with DTI, the "**DTI Parties**"), William Duelge ("**Duelge**") and Brian Lynch ("**Lynch**") on the one hand, and Debtor, STIM Investments LLC "**STIM**", HPL Contract Packaging LLC ("**HPL CP**"), HPL International LLC ("**HPL I**"), HPL Services LLC ("**Services**"), Inter-Tech LTD ("**InterTech**"), Radical Technologies, LLC ("**Radical Technolo**gies"), Exordium Engineering LLC ("**Exordium**"), and Gregory Kershner ("**Kershner,**" together with, HPL CP, HPL I, Services, InterTech, Radical Technologies, and Exordium, the "**Non-Debtor HPL Parties;**" Debtor and the Non-Debtor HPL Parties are collectively, the "**HPL Parties;**" the DTI Parties and HPL Parties are, collectively, the "**Parties**"). In support hereof, Debtor shows as follows:

**JURISDICTION, VENUE, AND BACKGROUND**

1. Debtor filed voluntary petition for relief under chapter 11 of title 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**") on January 29, 2026 (the "**Petition Date**").

2. No creditors' committee has been appointed in this case and no trustee or examiner has been appointed. Debtor remains debtor in possession.

3. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Debtor consents to the entry of final orders or judgments by the Bankruptcy Court.

4. On or about September 1, 2019, the DTI Parties and Debtor executed that certain License Agreement (the "**License Agreement**") and on or about January 14, 2020, DTI Parties and Debtor executed that certain Term Sheet and addendum to the License Agreement (the "**Addendum**", together with the License Agreement, the "**DLA**"). On or about March 2, 2020, DTI Parties and Debtor executed that certain Domain Name License Agreement (the "**DNA**").

5. In connection with the DLA, the Non-Debtor HPL Parties acquired equipment, machines and/or tools detailed in the Settlement Agreement (collectively, the "**Equipment**"):

6. On October 24, 2025, the DTI Parties issued a notice of termination to Debtor. providing notice of termination of the DLA and DNA; on November 17, 2025, DTI Parties filed a Demand for Arbitration and Statement of Claims against Debtor, initiating American Arbitration Association Case No. 01-25-0005-7758 (the "**Arbitration**").

7. Debtor scheduled DTI as an unsecured creditor in its Schedules in the amount of $18,939.90.

8. On March 27, 2026, DTI Parties filed a Motion to Convert Case to Chapter 7 for Cause, or in the Alternative, to Dismiss in the Bankruptcy Case (the "**Motion to Convert**").

9. On April 6, 2026, the DTI Parties filed a Proof of Claim in the Bankruptcy Case in the amount of $3,500,000 (the "**DTI Claim**").

10. On April 8, 2026, Debtor filed a Complaint for Declaratory Judgment and Breach of

Contract against DTI Parties in the Bankruptcy Court, initiating Adversary Proceeding No. 26-02012 (the "**Adversary Proceeding**").

11. On April 8, 2026, Duelge filed a Proof of Claim in the Bankruptcy Case in the amount of $435,000 (the "**Duelge Claim**") and Lynch filed a Proof of Claim in the Bankruptcy Case in the amount of $435,000 (the "**Lynch Claim**").

12. On April 29, 2026, Debtor filed its Plan of Reorganization (as amended and/or modified, the "**Plan**").

13. On June 9, 2026, Debtor filed motions to disallow the Duelge Claim and the Lynch Claim (the "**Claim Objections**").

14. On June 24, 2026, DTI Parties filed an Objection to Confirmation of the Plan and Supplemental Brief in Support of the Motion to Convert (the "**Plan Objection**").

15. On July 10, 2026, DTI Parties filed their Answer, Affirmative Defenses, and Counterclaim to Plaintiff's Complaint for Declaratory Judgment and Breach of Contract in the Adversary Proceeding (the "**Answer and Counterclaim**").

16. The Parties have conferred and finalized an agreement resolving all the issues between them. The terms of the agreement are incorporated into a settlement agreement (the "**Settlement Agreement**"). A true and correct copy of the fully execute is attached hereto as **Exhibit A**.[1]

## RELIEF REQUESTED

17. By this Motion, Debtor requests that the Court enter an order substantially in the form of the proposed order attached hereto as **Exhibit B** approving the Settlement Agreement and granting related relief.

---

[1] All capitalized terms not defined herein shall have the meanings ascribed to them in the Settlement Agreement.

## BASIS FOR RELIEF REQUESTED

18. Debtor requests that the Court approve the Settlement Agreement pursuant to Rule 9019. Under Rule 9019, the Court has discretionary authority to approve a compromise of a controversy or dispute. *See Protective Comm. for Independent Stockholders of TNT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Continental Airlines, Inc. v. Airline Pilots Ass'n Infl. (In re Continental Airlines, Inc.)*, 907 F.2d 1500, 1508 (5th Cir. 1990).

19. Whether to approve a proposed compromise is a matter within the sound discretion of the Bankruptcy Court and pre-trial settlements are favored by the courts. *See In re Munford, Inc.*, 97 F.3d 449, 455 (11th Cir. 1996); *In re AWECO, Inc.*, 725 F.2d 293, 297 (11th Cir. 1984); *In re Grot*, 291 B.R. 204, 208 (Bankr. M.D. Ga. 2003). Bankruptcy settlements are a "normal part of the bankruptcy process" and "desirable and wise methods of bringing to close proceedings otherwise lengthy, complicated and costly." *TNT Trailer*, 390 U.S. at 424 (1986).

20. According to the Eleventh Circuit Court of Appeals, in deciding whether to approve a proposed settlement, a bankruptcy court should evaluate: (a) the probability of success in litigation, with due consideration for the uncertainty of the facts and the law; (b) the difficulties, if any, to be encountered in collecting on a judgment; (c) the complexity and likely direction of the litigation and any attendant expense, inconvenience and delay; and (d) the paramount interest of the creditors and a proper deference to their reasonable use. *See In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir. 1990).

21. Whether a proposed settlement is a product of an arms-length negotiation is a factor bearing on the wisdom of the compromise. *In re Cajun Elec. Power Co-Op, Inc.*, 119 F.3d 349, 356 (5th Cir. 1997); *In re Foster Mortgage Corp.*, 68 F.3d 914, 918 (5th Cir. 1995). Additionally, determining whether the settlement is in the best interest of the estate is an important consideration.

*See, e.g., Cajun Elec.,* 119 F.3d at 356. Generally, the role of the Bankruptcy Court, when evaluating a proposed settlement is not to decide the issues in dispute by conducting a mini-trial. Instead, the bankruptcy court should determine whether the settlement is fair and equitable as a whole. *See, e.g., Cajun Elec.,* 119 F.3d at 355-56; *In re Joiner*, 319 B.R. 903, 907 (Bankr. M.D. Ga. 2004); *Grot*, 291 B.R. at 208 (2003).

22. Here, Debtor has considered (i) the cost of litigation, (ii) the risk of not prevailing on the Motions, (iii) the temporal and organizational strain on Debtor caused by the involvement of its officer, Bill Wilson, in the litigation, and (iv) other factors justifying the prompt and efficient resolution of the matter. Debtor has determined that the terms are fair to both parties, and that the resolution of the State Court Action and the Cash Collateral Objection resolves the most substantial litigation involved in this Debtor's case.

23. Debtor believes that approval of the Settlement Agreement is in the best interest of the estate and creditors and will be beneficial to the restructuring process.

WHEREFORE, having filed this Motion, Debtor asks the Court to grant the Motion, to approve the Settlement Agreement, and to grant Debtor such other and further relief as it may deem just and proper.

Dated: September 4, 2026

**ROUNTREE LEITMAN KLEIN &GEER, LLC**

*/s/ Ceci Christy*
Ceci Christy, Ga. Bar No. 370092
Century Plaza I
2987 Clairmont Road, Suite 350
Atlanta, Georgia 30329
(404) 584-1238 Telephone
cchristy@rlkglaw.com
*Attorneys for Debtor*

**<u>Exhibit A</u>**

**Settlement Agreement**

Docusign Envelope ID: 0C1D9387-E040-8516-8059-A5C5D86E4820

# SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is made and entered into this 1st day of September, 2026 (the "Agreement Date") by and between DT Inventions, LLC ("DTI"), Practically Impossible Labs, LLC ("PIL", together with DTI, the "DTI Parties"), William Duelge ("Duelge") and Brian Lynch ("Lynch") on the one hand, and Handle Preforms LLC ("Debtor"), STIM Investments LLC "STIM", HPL Contract Packaging LLC ("HPL CP"), HPL International LLC ("HPL I"), HPL Services LLC ("Services"), Inter-Tech LTD ("InterTech"), Radical Technologies, LLC ("Radical Technologies"), Exordium Engineering LLC ("Exordium"), and Gregory Kershner ("Kershner", together with, HPL CP, HPL I, Services, InterTech, Radical Technologies, and Exordium, the "Non-Debtor HPL Parties"; Debtor and the Non-Debtor HPL Parties are collectively, the "HPL Parties"; the DTI Parties and HPL Parties are, collectively, the "Parties") on the other hand.

## RECITALS

WHEREAS, on or about September 1, 2019, DTI Parties and Debtor executed that certain License Agreement (the "License Agreement");

WHEREAS, on or about January 14, 2020, DTI Parties and Debtor executed that certain Term Sheet and addendum to the License Agreement (the "Addendum", together with the License Agreement, the "DLA");

WHEREAS, on or about March 2, 2020, DTI Parties and Debtor executed that certain Domain Name License Agreement (the "DNA");

WHEREAS, in connection with the DLA, the Non-Debtor HPL Parties acquired the following equipment, machines and/or tools (collectively, the "Equipment"):

| **Description** | **Quantity** | **Location Last Known By The Parties** |
|---|---|---|
| 10/6 Design molds | 6 molds | Radius Packaging, Wisconsin |
| Tall Square Gallon molds | 6 molds | Radius Packaging, Wisconsin |
| Dairy Half Gallon molds | 6 molds | Radius Packaging, Wisconsin |
| Industrial Round Gallon molds | 6 molds | Radius Packaging, Wisconsin |
| Dairy Half Gallon molds | 6 molds | Crated with Petainer machine |
| 3-Quart Adorable molds | 6 molds | Crated with Petainer machine |
| Industrial Round Gallon – Stock Design | 7 molds | Tech Long #2, Oklahoma |
| Industrial Round Gallon – Stock Design with UN logo | 7 mold halves | Tech Long #2, Oklahoma |
| Dairy Half Gallon | 7 molds | Tech Long #2, Oklahoma |
| Industrial Round Gallon – Stock Design | 7 molds | Tech Long #3, Oklahoma |
| Cristalia Custom | 6 molds | Pac Tech, Puerto Rico |

| **Description** | **Quantity** | **Location Last Known By The Parties** |
|---|---|---|
| Cargill Custom Gallon | Unit cavity | EFI, Ohio |
| 3-Quart Adorable | Unit cavity | EFI, Ohio |
| Smooth Wall Dairy Gallon 1.1 | Unit cavity | EFI, Ohio |
| Industrial Round Gallon – Stock Design | Unit cavity | EFI, Ohio |
| Dairy Half Gallon | Unit cavity | EFI, Ohio |
| Husky 48 cavity injection tool | 1 | Georgia |
| Dairy Half Gallon injection unit cavity tool | 1 | EFI, OH |
| Industrial Round Gallon injection unit cavity tool | 1 | EFI, OH |
| Tall Square Gallon injection unit cavity tool | 1 | EFI, OH |
| Cargill Custom injection unit cavity tool | 1 | EFI, OH |

WHEREAS, in connection with the DLA, the Non-Debtor HPL Parties acquired the following molds and tools and sold them to third parties (collectively, the "Disclaimed Equipment"):

| | | |
|---|---|---|
| Smooth Wall Dairy Gallon molds | 7 molds | Premium Waters, Byram, MS |
| Dash-20 Design Dairy Gallon molds | 7 molds | Premium Waters, Byram, MS |
| Cristalia Custom | 6 molds | Pac Tech, Puerto Rico |
| EFI 24 cavity injection tool | 1 | Polyplas, DR |

WHEREAS, on October 24, 2025, DTI Parties issued a notice of termination to Debtor, providing notice of termination of the DLA and DNA;

WHEREAS, on November 17, 2025, DTI Parties filed a Demand for Arbitration and Statement of Claims against Debtor, initiating American Arbitration Association Case No. 01-25-0005-7758 (the "Arbitration");

WHEREAS, on January 29, 2026 (the "Petition Date"), Debtor filed a voluntary petition for relief under subchapter v of chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Georgia (the "Bankruptcy Court"), initiating Case No. 26-20125-jrs (the "Bankruptcy Case");

WHEREAS, Debtor scheduled DTI as an unsecured creditor in its Schedules in the amount of $18,939.90;

WHEREAS, on March 27, 2026, DTI Parties filed a Motion to Convert Case to Chapter 7 for Cause, or in the Alternative, to Dismiss in the Bankruptcy Case (the "Motion to Convert");

Docusign Envelope ID: 0C1D9387-E040-8516-8059-A5C5D86E4820

WHEREAS, on April 6, 2026, the DTI Parties filed a Proof of Claim in the Bankruptcy Case in the amount of $3,500,000 (the "DTI Claim");

WHEREAS, on April 8, 2026, Debtor filed a Complaint for Declaratory Judgment and Breach of Contract against DTI Parties in the Bankruptcy Court, initiating Adversary Proceeding No. 26-02012 (the "Adversary Proceeding")

WHEREAS, on April 8, 2026, Duelge filed a Proof of Claim in the Bankruptcy Case in the amount of $435,000 (the "Duelge Claim");

WHEREAS on April 8, 2026, Lynch filed a Proof of Claim in the Bankruptcy Case in the amount of $435,000 (the "Lynch Claim");

WHEREAS, on April 29, 2026, Debtor filed its Plan of Reorganization (as amended and/or modified, the "Plan");

WHEREAS, on June 9, 2026, Debtor filed its Motion to Disallow the Duelge Claim (the "Duelge Objection");

WHEREAS, on June 9, 2026, Debtor filed its Motion to Disallow the Lynch Claim (the "Lynch Objection");

WHEREAS, on June 24, 2026, DTI Parties filed an Objection to Confirmation of the Plan and Supplemental Brief in Support of the Motion to Convert (the "Plan Objection");

WHEREAS, on July 10, 2026, DTI Parties filed their Answer, Affirmative Defenses, and Counterclaim to Plaintiff's Complaint for Declaratory Judgment and Breach of Contract in the Adversary Proceeding (the "Answer and Counterclaim");

WHEREAS, the Parties have agreed to settle their disputes in accordance with this Agreement;

NOW THEREFORE, for and in consideration of the promises, the releases contained herein and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties hereby agree as follows:

**AGREEMENT**

1. **Recitals.** The foregoing recitals are confirmed by the Parties as true and correct and are incorporated herein by reference. The recitals are a substantive, contractual part of this Agreement.

2. **Approval of Settlement; Effective Date.**

a. Within three (3) business days of the Agreement Date, the Debtor shall file a motion pursuant to Bankruptcy Rule 9019 with the Bankruptcy Court seeking entry of an order approving

Docusign Envelope ID: 0C1D9387-E040-8516-8059-A5C5D86E4820

this Agreement and authorizing the Debtor to perform under this Agreement (the "9019 Order"). The Parties agree to act in good faith, support approval of this Agreement and take such actions as reasonably necessary to obtain Bankruptcy Court approval of this Agreement.

b. This Agreement shall not become effective with respect to the Debtor, and all claims held by and against the Debtor, until the 9019 Order is entered by the Bankruptcy Court. The "Debtor Effective Date" of this Agreement is the date that is one (1) business day after the 9019 Order becomes final and non-appealable.

c. Subject to and contingent upon execution of this Agreement by the Non-Debtor HPL Parties and DTI Parties, this Agreement shall be effective on the Agreement Date with respect to the Non-Debtor HPL Parties and DTI Parties.

3. **Settlement Payment.** Within five (5) Business days of the Debtor Effective Date, DTI Parties shall pay Debtor the sum of $25,000 (the "Settlement Amount"), which shall be paid pursuant to the following wire instructions to be delivered to counel for the DTI Parties on the Debtor Effective Date.

4. **Acknowledgements, Representations and Warranties Regarding Intellectual Property**

a. The HPL Parties acknowledge and agree that the DLA and DNA were terminated by the DTI Parties on October 24, 2025 and that the HPL Parties, and their past and present agents, employees, affiliates, parents, subsidiaries, heirs, assigns, representatives, predecessors and successors, are prohibited as of the Agreement Date from using or possessing the DTI Parties' intellectual property and/or trademarks.

b. The HPL Parties acknowledge and agree that the DTI Parties' intellectual property and trademarks for which the HPL Parties obtained a license pursuant to the now terminated DLA and DNA (collectively, the "DTI Parties' IP") contains valuable trade secrets and proprietary information of the DTI Parties and its suppliers and that any actual or threatened misappropriation of any the DTI Parties' IP will constitute immediate, irreparable harm to the DTI Parties and its suppliers for which monetary damages would be an inadequate remedy. Accordingly, the HPL Parties agree that injunctive or other equitable relief is an appropriate remedy for any threatened or actual misappropriation of the DTI Parties' IP and the DTI Parties may seek any such remedy without the need to post bond or other security or to prove the inadequacy of monetary damages, and nothing herein shall limit the right of the DTI Parties to seek such relief from any court of competent jurisdiction.

c. The HPL Parties represent and warrant that, within five (5) days of the Agreement Date, all confidential and/or proprietary information containing or reflecting the DTI Parties' IP, as defined in the DLA and/or DNA, will be returned to the DTI Parties, including but not limited to all electronic and digital information stored on the HPL Parties' computers, servers, cloud storage, email accounts, external storage devices, backup systems, mobile devices and/or other electronic repositories. Within three (3) days after the DTI Parties confirm receipt of the electronic and digital materials delivered by the HPL Parties, the HPL Parties shall permanently delete or

Docusign Envelope ID: 0C1D9387-E040-8516-8059-A5C5D86E4820

destroy all remaining copies of such materials in their possession, custody or control and shall not retain, use, reproduce, disclose, transfer, or permit access to any copy thereof. Following such deletion or destruction, the HPL Parties shall provide the DTI Parties with written confirmation that the foregoing return and deletion obligations have been completed.

Northing herein shall be deemed to require the Non-Debtor HPL Parties to provide the DTI Parties with any materials received from or exclusively containing intellectual property of Integrated Plastics Pty Ltd.

d. The HPL Parties represent and warrant that, within five (5) days of the Agreement Date, any agreement between any of the HPL Parties and Integrated Plastics Pty Ltd. will be terminated.

e. The HPL Parties represent and warrant that, within five (5) days of the Agreement Date, any agreement between any of the HPL Parties and any third party related to the manufacture and sale of PET bottles with a handle, preforms with a handle and the sale and use of associated manufacturing equipment and tooling for PET bottles with a handle will be terminated.

f. HPL CP and HPL I represent and warrant that, within five (5) days of the Agreement Date, HPL CP and HPL I will cease all operations and start winding down. The HPL Parties further represent and warrant that the HPL Parties have ceased and will not resume any operations in connection with the use of the DTI Parties' IP and/or the manufacture and sale of PET plastic bottles with handles, preforms with handles and/or the sale and use of associated manufacturing equipment and tooling.

5. **Bankruptcy Matters**

a. Subject to the occurrence of the Debtor Effective Date:

i. The Motion to Convert shall be deemed to be withdrawn;

ii. The DTI Claim shall be deemed to be withdrawn;

iii. The Duelge Claim will be deemed to be withdrawn;

iv. The Lynch Claim will be deemed to be withdrawn;

v. The Duelge Objection will be deemed to be withdrawn;

vi. The Lynch Objection will be deemed to be withdrawn;

vii. The Plan Objection shall be deemed withdrawn.

b. Within three (3) business days of the Debtor Effective Date:

Docusign Envelope ID: 0C1D9387-E040-8516-8059-A5C5D86E4820

i. The DTI Parties will file a notice(s) of withdrawal of the Motion to Convert, DTI Claim and Plan Objection;

ii. Duelge will file a notice(s) of withdrawal of the Duelge Claim;

iii. Lynch will file a notice(s) of withdrawal of the Lynch Claim; and

iv. The Debtor will file a notice(s) of withdrawal of the Duelge Objection and Lynch Objection;

6. **Transfer of Equipment**

a. Contemporaneous with the execution of this Agreement, the Non-Debtor HPL Parties shall execute a bill of sale transferring, assigning and conveying to the DTI Parties all of the Equipment (other than the Disclaimed Equipment and the SiPA Equipment (defined below)). The Non-Debtor HPL Parties certify that they will assign all of their ownership interest in the Equipment and will transfer good and marketable title to the Equipment, free and clear of all liens, security interests and encumbrances.

b. Within five (5) business days of the Agreement Date, the Non-Debtor HPL Parties will coordinate with the DTI Parties for the pickup of the Equipment at the DTI Parties' sole cost and expense.

c. With respect to the (i) 7 Smooth Wall Dairy Gallon molds, (ii) 7 Dash-20 Design Dairy Gallon molds, (iii) 6 Cristalia Custom molds, and (iv) EFI 24 cavity injection tool (collectively, the "Disclaimed Equipment"), the HPL Parties represent that they do not currently own the Disclaimed Equipment. The HPL Parties disclaim any right to ownership or possession of the Disclaimed Equipment. To the extent the HPL Parties have or had any rights with respect to the Disclaimed Equipment, all such rights are waived and/or released.

d. Within ninety (90) days of the Agreement Date, the Non-Debtor HPL Parties shall sell, transfer, assign and/or convey the (i) the SiPA 32 cavity injection tool and (ii) the SiPA blow molder (collectively, the "SiPA Equipment") as follows:

i. Component Removal. The Non-Debtor Parties at their own expense remove the entry orienting star wheel from the SiPA Blow Molder and the thread splits from the SiPA Injection Tool. This removal shall be scheduled within ninety (90) days of the execution of this Agreement. The heater banks will remain with the SiPA Blow Molder.

ii. Inspection. Within ten (10) days of the removal in subparagraph (i), DTI shall have the right to inspect and confirm the removal of the entry orienting star wheel and the thread splits.

Docusign Envelope ID: 0C1D9387-E040-8516-8059-A5C5D86E4820

7. **Releases**

a. On the Agreement Date, the DTI Parties, Duelge and Lynch release, acquit, and forever discharge the Non-Debtor HPL Released Parties (defined below) from any and all actions, causes of action, claims, suits, damages, judgments, liens and demands whatsoever in law and/or equity, contract or tort that any of the DTI Parties, Duelge and Lynch had, now have, or may later have or claim to have, known or unknown, against any of the Non-Debtor HPL Released Parties, individually or collectively, now accrued or that may accrue hereafter, arising out of or relating to facts or transactions that existed, occurred, happened, arose or transpired at any time from the beginning of time to the Agreement Date, including but not limited to all claims arising from or relating to the DLA, DNA, Equipment, Arbitration, DTI Claim, Duelge Claim, Lynch Claim, Bankruptcy Case, Adversary Proceeding, Duelge Objection, Lynch Objection, and/or Answer and Counterclaim. The DTI Parties, Duelge and Lynch covenant not to sue the Non-Debtor HPL Released Parties for any matter released in this Agreement. Nothing herein shall release the Non-Debtor HPL Released Parties from their obligations under this Agreement.

b. On the Agreement Date, the Non-Debtor HPL Parties release, acquit, and forever discharge the DTI Released Parties (defined below) from any and all actions, causes of action, claims, suits, damages, judgments, liens and demands whatsoever in law and/or equity, contract or tort that any of the Non-Debtor HPL Parties had, now have or may later have or claim to have, known or unknown, against any of the DTI Released Parties, individually or collectively, now accrued or that may accrue hereafter, arising out of or relating to facts or transactions that existed, occurred, happened, arose or transpired at any time from the beginning of time to the Agreement Date, including but not limited to all claims arising from or relating to the DLA, DNA, Equipment, Arbitration, DTI Claim, Duelge Claim, Lynch Claim, Bankruptcy Case, Adversary Proceeding, Duelge Objection, Lynch Objection, and/or Answer and Counterclaim. The Non-Debtor HPL Parties covenant not to sue the DTI Released Parties for any matter released in this Agreement. Nothing herein shall release the DTI Released Parties from their obligations under this Agreement.

c. Subject to and contingent upon the occurrence of the Debtor Effective Date:

i. On the Debtor Effective Date, the DTI Parties, Duelge and Lynch shall and shall be deemed to release, acquit, and forever discharge the Debtor and STIM from any and all actions, causes of action, claims, suits, damages, judgments, liens and demands whatsoever in law and/or equity, contract or tort that the DTI Parties, Duelge and Lynch had, now have or may later have or claim to have, known or unknown, against the Debtor and STIM, now accrued or that may accrue hereafter, arising out of or relating to facts or transactions that existed, occurred, happened, arose or transpired at any time from the beginning of time to the Agreement Date, including but not limited to all claims arising from or relating to the DLA, DNA, Equipment, Arbitration, DTI Claim, Duelge Claim, Lynch Claim, Bankruptcy Case, Adversary Proceeding, Duelge Objection, Lynch Objection, and/or Answer and Counterclaim. The DTI Parties, Duelge and Lynch covenant not to sue Debtor or STIM for any matter released in this Agreement. Nothing herein shall release the Debtor from its obligations under this Agreement;

Docusign Envelope ID: 0C1D9387-E040-8516-8059-A5C5D86E4820

ii. On the Debtor Effective Date, Debtor and STIM shall and shall be deemed to release, acquit, and forever discharge the DTI Released Parties from any and all actions, causes of action, claims, suits, damages, judgments, liens and demands whatsoever in law and/or equity, contract or tort that the Debtor and STIM had, now have or may later have or claim to have, known or unknown, against any of the DTI Released Parties, individually or collectively, now accrued or that may accrue hereafter, arising out of or relating to facts or transactions that existed, occurred, happened, arose or transpired at any time from the beginning of time to the Agreement Date, including but not limited to all claims arising from or relating to the DLA, DNA, Equipment, Arbitration, DTI Claim, Duelge Claim, Lynch Claim, Bankruptcy Case, Adversary Proceeding, Duelge Objection, Lynch Objection, and/or Answer and Counterclaim. Debtor and STIM covenants not to sue the DTI Released Parties for any matter released in this Agreement. Nothing herein shall release the DTI Released Parties from their obligations under this Agreement;

iii. Within three (3) business days of the Debtor Effective Date, the DTI Parties shall file a notice of dismissal of the Arbitration in the form attached hereto as **Exhibit A**; and

iv. Contemporaneous with the execution of this Agreement, counsel for the Parties shall execute a stipulation of dismissal (the "Stipulation of Dismissal") in the form attached hereto as **Exhibit B**. Within three (3) business days of the Debtor Effective Date, counsel for the DTI Parties shall file the Stipulation of Dismissal in the Adversary Proceeding.

d. Nothing herein shall be construed to be a release of any claims between the HPL Parties and TTDK LLC, DTK Equipment LLC or a release of any claims between the HPL Parties.

e. Definitions.

i. "DTI Released Parties" means and refers to DT Inventions, LLC, Practically Impossible Labs, LLC, William Duelge, Brian Lynch and their respective past and present agents, employees, attorneys, heirs, representatives, members, shareholders, officers, directors, partners, managers, affiliates, predecessors and successors; provided, however, DTI Released Parties expressly excludes TTDK LLC and DTK Equipment LLC.

ii. "Non-Debtor HPL Released Parties" means and refers to HPL Contract Packaging LLC, HPL International, HPL Services LLC, Inter-Tech LTD, Radical Technologies, LLC, Exordium Engineering LLC, Gregory Kershner and their respective past and present agents, employees, attorneys, heirs, representatives, members, shareholders, officers, directors, partners,

Docusign Envelope ID: 0C1D9387-E040-8516-8059-A5C5D86E4820

members, managers, affiliates, predecessors and successors, provided, however, the Non-Debtor HPL Released Parties expressly excludes Debtor.

8. **Representations and Warranties.** The Parties hereby make the following representations and warranties, and acknowledge that these and all other representations and warranties contained herein are material to this Agreement.

a. The Parties are fully competent to execute this Agreement and to bind themselves to the promises, covenants, terms and conditions set forth herein.

b. The Parties represent and warrant that this Agreement is not being made or entered into with the actual intent to hinder, delay or defraud any entity or person.

c. No representation regarding the nature and extent of legal liabilities of the Parties has induced this Agreement.

d. The Parties acknowledge that each Party has received consideration in exchange for the releases provided herein.

e. The Parties represent and warrant that there has been no assignment, sale or other transfer or disposition of any interest in any of the claims herein released.

f. The Parties acknowledge and represent that this Agreement has been reviewed by their respective legal counsel and such other advisors as deemed necessary by the Parties.

g. The execution of this Agreement by the HPL Parties and the performance by the HPL Parties hereunder will not violate or result in a breach or constitute a default under any agreements to which any of the HPL Parties are a party.

h. The execution of this Agreement by the DTI Parties and the performance by the DTI Parties hereunder will not violate or result in a breach or constitute a default under any agreements to which any of the DTI Parties are a party.

i. The undersigned representative(s) of the HPL Parties represents and warrants that such person has the power, authority and legal right to execute this Agreement and all documents to be executed in connection herewith on behalf of any of the HPL Parties and to bind the HPL Parties to the promises, covenants, terms and conditions set forth herein and those set forth in all documents to be executed in connection herewith.

j. The undersigned representative(s) of the DTI Parties represents and warrants that such person has the power, authority and legal right to execute this Agreement and all documents to be executed in connection herewith on behalf of any of the DTI Parties and to bind the DTI Parties to the promises, covenants, terms and conditions set forth herein and those set forth in all documents to be executed in connection herewith.

Docusign Envelope ID: 0C1D9387-E040-8516-8059-A5C5D86E4820

9. **Notice.** Notice shall be provided as set forth below via email and overnight delivery service as follows, and shall be effective when deposited or transmitted:

**To the DTI Parties:**
DT Inventions LLC
Practically Impossible Labs LLC
c/o Tim Thibodeau
12239 Mosielee St.
Houston, Texas 77086
aberfence@aol.com

*With a copy to*:
Lisa Wolgast, Esq.
Barnes & Thornburg LLP
3340 Peachtree Road, NE, Suite 2900
Atlanta, Georgia 30326
Lisa.Wolgast@BTlaw.com

**To the HPL Parties**:
Gregory A. Kershner
2120 Powers Ferry Road
Suite 400
Atlanta, Georgia 30339
gkershner@inter-techltd.com

*With a copy to*:
Ceci Christy
Rountree Leitman Klein & Geer, LLC
Century Plaza I
2987 Clairmont Rd., Ste. 350
Atlanta, Georgia 30329
cchristy@rlkglaw.com

10. **Attorneys' Fees and Expenses.** The Parties shall bear their own attorneys' fees and expenses in connection with this Agreement, Arbitration, Bankruptcy Case and Adversary Proceeding.

11. **Governing Law.** This Agreement, including its interpretation and enforcement, will be governed by the laws of the State of Texas, without regard to any state's choice of law rules.

12. **Jurisdiction.** The Parties acknowledge and agree that the exclusive venue for resolving any disputes relating to this Agreement shall be either the Bankruptcy Court or the federal and state courts located in Harris County, Texas. The Parties each consent to personal

Docusign Envelope ID: 0C1D9387-E040-8516-8059-A5C5D86E4820

jurisdiction before the Bankruptcy Court and consent to the personal jurisdiction of the federal and state courts located in Harris County, Texas.

13. **Strict Compliance.** The failure of any Party at any time or times to demand strict performance by the other Party(ies) of any of the terms, covenants, or conditions set forth herein shall not be construed as a continuing waiver or relinquishment thereof. Any Party may, at any time, demand strict and complete performance by the other Party(ies) of the terms, covenants, and conditions of this Agreement.

14. **Drafting.** This Agreement was negotiated and drafted with full participation of the Parties. In the event that it is determined that an ambiguity exists in this Agreement, any such ambiguity shall not be resolved or otherwise construed against any Party, but rather shall be resolved by a fair reading of the intent of the Parties as established herein.

15. **Successors and Assigns.** The Parties agree that the terms, covenants, and obligations set forth herein shall inure to the benefit of and be binding upon each of their respective agents, attorneys, employees, representatives, administrators, executors, successors and assigns, including without limitation, any chapter 11 or 7 trustee that may be appointed in the Bankruptcy Case.

16. **Headings.** The headings herein have been used to designate the various sections of this Agreement and are solely for convenience and ease of reference and shall not be construed in any event or manner as interpretive of this Agreement.

17. **Modification.** This Agreement shall not be amended, altered, revised, modified, terminated, or changed, except by further written agreement by the Parties.

18. **Severance.** If any provision of this Agreement is found to be contrary to law or void, the remainder of the Agreement shall be considered valid and enforceable and shall remain in full force and effect and shall in no way be affected, impaired, or invalidated.

19. **Multiple Counterparts.** This Agreement may be signed in multiple counterparts, each of which will be deemed an original and all of which taken together will constitute one instrument binding upon the Parties, notwithstanding that each Party is not a signatory to the same counterpart. Any scanned PDF counterparts or facsimile counterparts shall be considered originals. The Parties may execute this Agreement by Docusign or other electronic means.

20. **Entire Agreement.** The Parties agree that this Agreement sets forth the entire agreement of the Parties and that no prior oral or written matters extrinsic to this Agreement shall have any force or effect. This Agreement may not be altered, amended or modified in any manner whatsoever except by a writing duly executed by each of the Parties hereto.

[SIGNATURES ON FOLLOWING PAGE]

Docusign Envelope ID: 0C1D9387-E040-8516-8059-A5C5D86E4820

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed as of the date first written above.

**DT INVENTIONS, LLC, a Texas limited liability company**

DocuSigned by:
By: [signature]
756199CA62244BC...
Name: Tim thibodeau
Title: Managing Member

**PRACTICALLY IMPOSSIBLE LABS, LLC, a Texas limited liability company**

DocuSigned by:
By: [signature]
756199CA62244BC...
Name: Tim thibodeau
Title: Managing Member

Signed by:
By: William Duelge
6F88CA180E5847A...
**WILLIAM DUELGE**

Signed by:
By: Brian Lynch
3F06E4D9B0014CE...
**BRIAN LYNCH**

**HANDLE PREFORMS, LLC, a Delaware limited liability company**

Signed by:
By: Gregory Kershner
93F48561C5794BC...
Name: Gregory Kershner
Title: Manager

**HPL CONTRACT PACKAGING LLC, a Georgia limited liability company**

Signed by:
By: Gregory Kershner
93F48561C5794BC...
Name: Gregory Kershner
Title: Manager

**HPL INTERNATIONAL LLC, a Georgia limited liability company**

Signed by:
By: Gregory Kershner
93F48561C5794BC...
Name: Gregory Kershner
Title: Manager

Docusign Envelope ID: 0C1D9387-E040-8516-8059-A5C5D86E4820

**HPL SERVICES LLC, a Georgia limited liability company**

Signed by:
By: Gregory Kershner
93F48561C5794BC
Name: Gregory Kershner
Title: Manager

**INTER-TECH LTD, a Delaware limited liability company**

Signed by:
By: Gregory Kershner
93F48561C5794BC
Name: Gregory Kershner
Title: Manager

**RADICAL TECHNOLOGIES, LLC**, a Georgia limited liability company

Signed by:
By: Gregory Kershner
93F48561C5794BC
Name: Gregory Kershner
Title: Manager

**EXORDIUM ENGINEERING LLC**, a Georgia limited liability company

Signed by:
By: Gregory Kershner
93F48561C5794BC
Name: Gregory Kershner
Title: Manager

**STIM INVESTMENTS LLC**, a Georgia limited liability company

Signed by:
By: Gregory Kershner
93F48561C5794BC
Name: Gregory Kershner
Title: Manager

Signed by:
By: Gregory Kershner
93F48561C5794BC
**GREGORY KERSHNER**

**Exhibit B**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | |
|---|---|
| **In Re:**<br><br>**HANDLE PREFORMS, LLC,**<br><br>**Debtor.** | **CASE NO. 26-20125-JRS**<br>**SUBCHAPTER V**<br><br>**CHAPTER 11** |

**ORDER GRANTING**
**MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT**

Upon consideration of the motion (the "**Motion**")[1] of Debtor for Approval of its Settlement Agreement resolving the disputes and claims between Debtor, Debtor Parties, Non-Debtor Parties, STIM and DTI, the DTI Parties, Duelge, and Lynch; and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b); and venue being proper before this Court under 28 U.S.C. §§ 1408 and 1409; the Court having considered the Motion and all other matters of record, including the lack of a

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

response to the Motion; and based on the forgoing, no further notice or hearing is required; the Court finds that good cause exists to grant the relief requested in the Motion. Accordingly,

It is hereby **ORDERED** as follows:

1. The Motion is GRANTED.

2. Debtor is authorized to enter into the Settlement Agreement attached to the Motion as **Exhibit A**, which is hereby APPROVED.

3. This Order shall be effective and enforceable immediately upon entry hereof.

4. Debtor is authorized and empowered to take all actions necessary to implement the relief granted in this Order.

5. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

**### END OF ORDER ###**

**Prepared and presented by:**

**ROUNTREE LEITMAN KLEIN & GEER, LLC**

*/s/ Ceci Christy*
Ceci Christy, Ga. Bar No. 370092
Century Plaza I
2987 Clairmont Road, Suite 350
Atlanta, Georgia 30329
(404) 584-1238 Telephone
cchristy@rlkglaw.com
*Attorneys for Debtor*